UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

**FILED**
NOV 2 6 2014



| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID MARROWBONE,<br><br>Defendant. | 3:14-CR-30071-RAL<br><br><br>OPINION AND ORDER DENYING<br>DEFENDANT'S MOTION TO DISMISS |

The Government charged David Marrowbone with one count of failure to register as a sex offender in violation of 18 U.S.C. § 2250(a). Doc. 1. On October 14, 2014, Marrowbone, through counsel, filed a motion to dismiss indictment for failure to state an offense pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B) and a brief in support of that motion. Docs. 27, 28. The Government opposed the motion and filed a brief supporting its position, Doc. 31, after which Marrowbone filed a reply brief, Doc. 32. For the reasons set forth below, Marrowbone's motion to dismiss is denied.

I.   **Legal Standard on Motion to Dismiss and Validity of Indictment**

Marrowbone argues that the indictment fails to state an offense and therefore must be dismissed pursuant to Rule 12(b)(3)(B). Docs. 27, 28, 32. When ruling on a motion to dismiss, a court must accept all factual allegations in the indictment as true. See United States v. Sampson, 371 U.S. 75, 78–79 (1962). A valid indictment must allege that "the defendant performed acts which, if proven, constitute the violation of law for which he is charged." United

States v. Polychron, 841 F.2d 833, 834 (8th Cir. 1988). If an indictment fails to allege acts that constitute a violation of law, then it may be dismissed. Id. An indictment adequately states an offense if it "contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." United States v. Sewell, 513 F.3d 820, 821 (8th Cir. 2008) (quoting United States v. Hernandez, 299 F.3d 984, 992 (8th Cir. 2002)). This is a low bar, and an indictment normally will be found valid unless it is "so defective" that no reasonable construction of it properly charges the offense for which the defendant is being tried. See Sewell, 513 F. 3d at 821. Normally, an indictment that tracks the statutory language is sufficient. Id.

The Government alleges that Marrowbone failed to register or update his registration as required by federal law. Federal law requires that:

> Whoever—
> (1) is required to register under the Sex Offender Registration and Notification Act;
> (2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law . . . ;
> . . . and
> (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;
> shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(a). The indictment charges:

> On or between the 3rd day of February, 2014, and the 14th day of March, 2014, in the District of South Dakota, the defendant, David Marrowbone, a person required to register under the Sex Offender Registration and Notification Act, and a sex offender by reason of a conviction under Federal Law, did knowingly fail to register and update a registration, in violation of 18 U.S.C. § 2250.

Doc. 1.

2

Although terse, the wording of the indictment tracks the three elements of the offense. First, it alleges that Marrowbone is required to "register under the Sex Offender Registration and Notification Act," invoking § 2250(a)(1). Second, it alleges that Marrowbone is a "sex offender by reason of a conviction under federal law," which is required by § 2250(a)(2)(A). Third, it alleges that Marrowbone "knowingly fail[ed] to register and update a registration," which tracks the language of § 2250(a)(3). The indictment also alleges a narrow timeframe in which Marrowbone allegedly failed to register, which provides sufficient notice for him to plea a prior conviction or acquittal of the current alleged offense. On its face, the indictment is valid.

A valid indictment ordinarily will survive a motion to dismiss for failure to state an offense without further inquiry. "An indictment should be tested solely on the basis of the allegations made on its face," Sampson, 371 U.S. at 78–79, and no evidence outside the four corners of the indictment should be considered, United States v. Hall, 20 F.3d 1084, 1087 (10th Cir. 1994). In a criminal proceeding based on a grand jury indictment, there is no procedure to test the sufficiency of the Government's evidence prior to trial. United States v. Ferro, 252 F.3d 964, 968 (8th Cir. 2001). A court cannot dismiss an indictment based on "predictions as to what the trial evidence will be," instead it must give the Government the opportunity to present its evidence. Id. (quoting United States v. Laurentis, 230 F.3d 659, 661 (3d Cir. 2000). However, in certain circumstances, such as when operative facts are undisputed, it is permissible for a court to consider evidence in connection with a pretrial motion to dismiss. United States v. Lafferty, 608 F. Supp. 2d 1131 (D.S.D. 2009) (citing Hall, 20 F.3d at 1087–88).

In this case, both parties agree that the underlying criminal offense alleged to trigger Marrowbone's responsibility to register is a 1982 federal conviction for assault with intent to

3

commit rape in violation of the version of 18 U.S.C. § 113(a) that was in force at the time.[1] Doc. 28 at 3; Doc. 31 at 3. Marrowbone argues that his 1982 conviction for assault with intent to commit rape does not qualify as an offense for which he must register as a sex offender. Thus, the issue raised is whether the underlying offense is a qualifying offense for purposes of § 2250 and the Sex Offender Registration and Notification Act (SORNA). This is a legal rather than a factual issue appropriate to be decided before trial. If Marrowbone's claim is valid, it would be unfair to Marrowbone and a waste of judicial resources to begin a trial on an indictment that would be dismissed on a legal issue.

**II.     Whether Assault with Intent to Rape is a Sex Offense**

Only a "sex offender" who is required to register under SORNA, but fails to so register is subject to criminal punishment under § 2250. A sex offender is an individual who has been convicted of a "sex offense." 42 U.S.C. § 16911(1). Federal law defines a sex offense:

> [T]he term "sex offense" means—
>    (i) a criminal offense that has an element involving a sexual act or sexual contact with another;
>    (ii) a criminal offense that is a specified offense against a minor;
>    (iii) a Federal offense (including an offense prosecuted under section 1152 or 1153 of Title 18) under section 1591, or chapter 109A, 110 (other than section 2257, 2257A, or 2258), or 117, of Title 18;
>    (iv) a military offense specified by the Secretary of Defense under section 115(a)(8)(C)(i) of Public Law 105-119 (10 U.S.C. 951 note); or
>    (v) an attempt or conspiracy to commit an offense described in clauses (i) through (iv).

42 U.S.C. § 16911(5)(A). The Government does not claim Marrowbone's 1982 conviction was a specified offense against a minor victim. Marrowbone's 1982 conviction was a violation of 18 U.S.C. § 113 as it existed at the time and thus was not one of the enumerated federal offenses or

---

[1] Assault with intent to commit rape is no longer included in 18 U.S.C. § 113.

4

a specified military offense. Therefore, the 1982 offense is a sex offense only if it falls under clause (i) or clause (v) of the definition of sex offense.

To decide whether an underlying conviction is a sex offense, the statute directs a court to determine whether the offense of conviction has "an element involving a sexual act or sexual contact with another." 42 U.S.C. § 16911(5)(A)(i). The use of terms like "conviction" in § 16911(1) and "element" in § 16911(5)(A)(i) suggests a categorical approach to determine whether the prior offense qualifies as a sex offense. See United States v. Gonzalez-Medina, 757 F.3d 425, 429 (5th Cir. 2014) (citing Taylor v. United States, 495 U.S. 575, 600–01 (1990)). However, because the assault statute under which Marrowbone was convicted charged alternate versions of assault, this Court may consider a limited scope of facts beyond the statute to determine what elements must have been proven to secure the conviction. Cf. Descamps v. United States, 133 S. Ct. 2276, 2283–84 (2013) (finding that the modified categorical analysis was only to be used to enable a traditional categorical analysis of the elements of an offense that could be charged in alternate variations).

Assault with intent to commit rape is not necessarily a "criminal offense that has an element involving a sexual act or sexual contact with another." The terms "sexual act" and "sexual contact" are defined in Title 18, Chapter 109A, of the United States Code, and both require actual physical contact between the offender and the victim. 18 U.S.C. §§ 2246(2)–(3). Assault with intent to commit rape had two elements: (1) an assault (2) perpetrated with the specific intent to commit rape. United States v. Iron Shell, 633 F.2d 77, 88 (8th Cir. 1980). The crime of assault with intent to commit rape could be committed without any actual physical contact with the victim. Id.; see also Ladner v. United States, 358 U.S. 169, 177 (1958) ("[A]n assault is ordinarily held to be committed merely by putting another in apprehension of harm

5

whether or not the actor actually intends to inflict or is capable of inflicting that harm."). While a conviction of assault with intent to commit rape could have involved a sexual act or sexual contact, neither is a necessary element for a conviction. Assault with intent to rape therefore cannot be considered a sex offense under clause (i) of 42 U.S.C. § 16911(5)(A), which requires "a criminal offense that has an element involving a sexual act or sexual contact with another."

The Government posits that rape is a criminal offense that has a sexual act as an element of the offense. Doc. 31 at 4–7. The Government then argues that assault with intent to rape is, in substance, an attempted rape and a "sex offense" under 42 U.S.C. § 16911(5)(A)(v). Doc. 31 at 4–7. This Court agrees with the Government's interpretation of the definition of sex offense.

At the time of Marrowbone's conviction in 1982, rape was a federal offense that necessarily included a sexual act. A conviction for the federal offense[2] of rape required proving sexual intercourse obtained through the "use of force by the offender and an absence of consent by the victim." Williams v. United States, 327 U.S. 711, 715 (1946). Sexual intercourse is a

---

[2] While it is not clear from the record at this point what the basis for federal jurisdiction was for Marrowbone's criminal case in 1982, it must have been either federal enclave jurisdiction, Major Crimes Act jurisdiction, or Indian Country Crimes Act jurisdiction. In 1982, federal law made "rape" a crime punishable by death or up to life in prison. 18 U.S.C. § 2031, repealed by Sexual Abuse Act of 1986, P.L. 99-646 § 86, 100 Stat. 3592, 3623 (1986); see also Oliver v. United States, 230 F. 971, 973–74 (9th Cir. 1916) ("[B]y giving a crime a name known . . . to the common law a crime is not less clearly ascertained than it would be by using the definition as found in the treatises of the common law . . . . 'Congress . . . may as well define, by using a term of a known and determinate meaning, as by an express enumeration of all the particulars included in that term. That is certain which is, by necessary reference, made certain.'" (quoting United States v. Smith, 18 U.S. (5 Wheat.) 153, (1820))). Thus, if the crime was committed in a federal enclave, such as Corps of Engineers property, then the federal definition would control. If the crime was committed in Indian country by a non-Indian perpetrator against an Indian victim, the federal enclave law would apply. 18 U.S.C. § 1152 (1982). If the crime was committed in Indian country by an Indian perpetrator against an Indian or non-Indian victim, then federal law would also apply. 18 U.S.C. § 1153 (1982) ("Any Indian who commits against the person . . . of another Indian or other person any of the following offenses, namely . . . rape . . . [or] assault with intent to commit rape, . . . within the Indian country, shall be subject to the same laws and penalties as all other persons committing . . . the above offenses, within the exclusive jurisdiction of the United States.").

sexual act as defined by federal law. 18 U.S.C. § 2246(2)(A) (defining "sexual act" in part as "contact between the penis and the vulva or the penis and the anus"). Rape unquestionably is a sex offense and was so in 1982.

A conviction of assault with intent to commit rape necessarily requires proving an attempted rape. To be found guilty of an attempted crime, a person must have the specific intent to commit the underlying offense and must have taken a substantial step toward the completion of the crime. United States v. Joyce, 693 F.2d 838, 841 (8th Cir. 1982). A substantial step is an overt act that that goes beyond mere preparation and would ordinarily, if uninterrupted, lead to the commission of the crime. Id. at 843. The act of committing an assault of the intended victim would necessarily require taking a substantial step toward the completion of the crime. See also United States v. Bear Ribs, 562 F.2d 563, 564 (8th Cir. 1977) (per curiam) ("The common law offense of simple assault . . . requires the showing of an offer or *attempt* by force or violence to do corporal injury to another." (emphasis added)). A person who has been convicted of assault with intent to commit rape therefore has necessarily been convicted of a crime that is, in substance, an attempted rape, notwithstanding the fact that the offense was not entitled "attempted rape." Therefore, Marrowbone's conviction for assault with intent to commit rape falls within 42 U.S.C. § 16911(5)(A)(v), and is a sex offense for purposes of SORNA.

Marrowbone argues that Congress intended the federal offenses enumerated in 42 U.S.C. § 16911(5)(A)(iii) to be the only federal sex offenses for purposes of SORNA. Doc. 28 at 7–8; Doc. 32 at 4–5. This argument is not without some superficial merit. As opposed to clause (iii), which describes a "federal offense," clauses (i) and (ii) of § 16911(5)(A) both describe "criminal offense[s]." 42 U.S.C. §§ 16911(5)(A)(i)–(iii). "Criminal offense" is defined later in the section: "The term 'criminal offense' means a State, local, tribal, foreign, or military

7

offense . . . or other criminal offense." 42 U.S.C. § 16911(6). While the definition of criminal offense specifically includes State, local, and tribal offenses, it does not explicitly include the term "federal offense." Id. However, an "other criminal offense" under § 6911(6) must include a federal offense; to hold otherwise would be to read "other criminal offense" out of the provision altogether. The United States Court of Appeals for the Fourth Circuit addressed this issue in United States v. Dodge, 597 F.3d 1347 (11th Cir. 2010). In that case, the Fourth Circuit found that, as a whole, the SORNA definition was not intended to "exclude certain offenses but rather to expand the scope of offenses" that meet the criteria of a sex offense. Id. at 1352. The Fourth Circuit in Dodge also reasoned that while Congress left Chapter 71 of Title 18 regulating obscenity out of the list of enumerated offenses, another provision defining sex offenses encompassed some of the offenses included in that title, showing that Congress did not intend the enumeration in clause (iii) to be exclusive. Id. at 1352–53. Furthermore, the stated purpose of the act to "protect the public from sex offenders and offenders against children" by creating a "comprehensive" national registration of sex offenders, 42 U.S.C. § 16901, supports the conclusion that Congress was trying to cast a wide net when defining "sex offense."

Assault with intent to commit rape and Chapter 99, which defined and criminalized rape prior to enactment of Chapter 109A,[3] had both been removed from Title 18 by the time SORNA was enacted. See Sexual Abuse Act of 1986, P.L. 99-646, § 87, 100 Stat. 3592, 3623 (1986) (striking assault with intent to commit rape from 18 U.S.C. § 113 and repealing Chapter 99 of

---

[3] Congress repealed Chapter 99 of Title 18 and the crime of assault with intent to commit rape in the very same act through which it enacted Chapter 109A of Title 18, which includes the crime of Aggravated Sexual Abuse and other crimes involving various types of sexual abuse. Sexual Abuse Act of 1986, P.L. 99-646, § 87, 100 Stat. 3592, 3620–23. It is self-evident that Congress, in repealing these crimes and enacting Chapter 109A, did not intend to decriminalize rape or assault with intent to commit rape. Rather, the repeal of Chapter 99 stemmed from enacting the more comprehensive statute in Chapter 109A. Offenses in Chapter 109A are considered sex offenses under SORNA. 42 U.S.C. § 16911(5)(A)(iii).

8

Title 18); Adam Walsh Child Protection and Safety Act of 2006, P.L. 109-248, 120 Stat. 587 (2006) (enacting SORNA). It is not surprising then that Congress did not enumerate those offenses in § 16911(5)(A)(iii). This Court agrees with the Fourth Circuit holding that 42 U.S.C. § 16911(5)(A)(iii) is not the exclusive list of the federal offenses that may be considered a sex offense.

The United States Attorney General promulgated SORNA guidelines and regulations called the National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38,030 (July 2, 2008) [hereinafter SMART Guidelines], pursuant to Congressional directive, 42 U.S.C. § 16912(b). These guidelines also support including a conviction of assault with intent to commit rape as triggering a registration requirement under SORNA. The SMART Guidelines state:

> [A] jurisdiction may define an offense of 'assault with intent to commit rape.' Whether or not the word 'attempt' is used in the definition of the offense, this is in substance an offense that covers certain attempts to commit rapes and hence is covered under the final clause of the SORNA definition.

SMART Guidelines, 73 Fed. Reg. at 38051. Because these guidelines were passed pursuant to a delegation of authority by Congress and in compliance with standard notice and comment requirements, three circuit courts of appeal have determined that the SMART Guidelines are substantive rules to which the judiciary owes deference. United States v. Lott, 750 F.3d 214, 217–20 (2d Cir.), cert denied, 135 S. Ct. 253 (2014); United States v. Bridges, 741 F.3d 464, 468 & n.5 (4th Cir. 2014); United States v. Stevenson, 676 F.3d 557, 565 (6th Cir. 2012). Because assault with intent to commit rape is a covered "sex offense" under SORNA as confirmed by the SMART Guidelines, Marrowbone is not entitled to dismissal of the indictment on that ground.

III. **Whether Marrowbone's SORNA Registration Requirement has Expired**

Marrowbone next argues that, even if the 1982 offense was a sex offense, he no longer has to register under SORNA. Sex offenders are required to register for varying periods of time depending upon their classifications as tier I, tier II, or tier III sex offenders. 42 U.S.C. § 16915. A sex offender is guilty of failing to register only if he or she is required to register. 18 U.S.C. § 2250(a)(1). Excluding time spent in custody or civil confinement, a tier III sex offender must maintain current registration for the remainder of his or her life,[4] a tier II sex offender must maintain current registration for a period of twenty-five years, and a tier I sex offender must maintain current registration for a period of fifteen years. 42 U.S.C. § 16915.

Marrowbone argues that, even if assault with intent to commit rape is a sex offense, he is not a tier III offender. Doc. 28 at 8–9. Therefore, he argues, his registration period would have ended either in 1997 or 2007, either fifteen or twenty-five years after his 1982 conviction. Id. However, SORNA explicitly states that the registration periods "exclud[e] any time the sex offender is in custody or civilly committed." 42 U.S.C. § 16915(a). Marrowbone has been incarcerated for a significant portion of the time between the 1982 offense and the alleged current offense. According to court records, since his release in 1982 Marrowbone has been sentenced in the District of South Dakota to over eight and one-half years of confinement.[5] 3:89-CR-30061, Doc. 2 at 2 (sentencing Marrowbone to eighty-four months' custody); 5:87-CR-50088, Doc. 1 at 2 (sentencing Marrowbone to eighteen months' custody); 3:83-CR-30002, Doc. 1 at 2 (sentencing Marrowbone to an unspecified period of custody). The Government asserts that Marrowbone has been incarcerated in state prison as well, but did not come forward with

---

[4] Tier III and tier I sex offenders can earn a reduction of the period of registration, 42 U.S.C. § 16915(b), but that provision is not at issue at this point in this case.

[5] This Court has had the Clerk of Court retrieve these files from the archives and will have the Clerk of Court retain the records. Those records seem proper for judicial notice under Rule 201 of the Federal Rules of Evidence, and notice is given under Rule 201(e) of the intention of the Court to take judicial notice.

10

records to show how much time Marrowbone has spent in prison since 1982. Even if Marrowbone's offense is less than a tier III offense, there is a question of fact whether his registration period has ended.

There also is a thorny question of whether it is for this Court or a jury to resolve the issue of which sex offender registration tier Marrowbone fits in. The SORNA statute does not specify whether it is for a court or a jury to decide in which tier an offender belongs. SORNA defines a tier III sex offender in pertinent part as:

> [A] sex offender whose offense is punishable by imprisonment for more than 1 year and—
> (A) is comparable to or more severe than the following offenses, or an attempt or conspiracy to commit such an offense:
> (i) aggravated sexual abuse or sexual abuse (as described in sections 2241 and 2242 of Title 18); or
> (ii) abusive sexual contact (as described in sections 2244 of Title 18) against a minor who has not attained the age of 13 years;
> (B) involves kidnapping of a minor (unless committed by a parent or guardian); or
> (C) occurs after the offender becomes a tier II sex offender.

42 U.S.C. § 16911(4). A tier II offender is a sex offender who is not a tier III offender and whose offense is "punishable by imprisonment for more than 1 year" and either is "comparable to or more severe than" certain offenses against minors or occurs after the offender becomes a tier I offender. Id. § 16911(3). A tier I sex offender is a "sex offender other than a tier II or tier III sex offender." Id. § 16911(2).

Generally, statutory interpretation is a question of law that is to be determined by the court, see Bollenbach v. United States, 326 U.S. 607, 612 (1946), and other courts have determined an offender's tier level as a matter of law using the same categorical statutory interpretation technique as was used above to determine whether a conviction of assault with intent to rape is a sex offense, United States v. Cabrera-Gutierrez, 756 F.3d 1125, 1133–34 (9th

11

Cir.), cert. denied, 135 S. Ct. 124 (2014); United States v. Backus, 550 F. App'x 260, 262 (6th Cir.), cert. denied, 134 S. Ct. 2153 (2014); United States v. Taylor, 644 F.3d 573, 576–77 (7th Cir. 2011); United States v. Black, 963 F. Supp. 2d 790, 793–96 (E.D. Tenn. 2013). However, other than in Black, the procedural posture of those cases was different than the procedural posture of this case in a significant way. In Cabrera-Gutierrez, Backus, and Taylor the courts were determining the sex offender tier in order to properly apply sentencing guidelines after the defendants' guilty pleas had been accepted. In Black the district court addressed on a motion to dismiss the sex offender tier in which the defendant belonged. The district court in Black referred to the SMART Guidelines on whether to classify a prior crime as a tier II or tier III offense: "[J]urisdictions generally may premise the determination on the elements of the offense, and are not required to look to underlying conduct that is not reflected in the offense of conviction." Black, 963 F. Supp. 2d at 795 (quoting SMART Guidelines, 73 Fed. Reg. at 38053). The district court then determined that the defendant was a tier II offender by comparing the elements of the defendant's underlying offense with the elements of SORNA tier II sex offenses and thereby denied the motion to dismiss. Black, 963 F. Supp. 2d at 795–96, 798.

This Court hesitates to follow the decision in Black. Marrowbone has the right to demand that a jury make a determination on every element of the offense the Government claims he committed. Apprendi v. New Jersey, 530 U.S. 466, 476 (2000); United States v. Gaudin, 515 U.S. 506, 511 (1995). For failure to register or update a registration, one of the essential elements of the offense is that the defendant is required to register under SORNA, 18 U.S.C. § 2250(a), which requires determining the duration of a sex offender's required registration period, 42 U.S.C. § 16915. The language of the statute arguably involves a fact and value judgment—whether the underlying offense is "*comparable to or more severe than*" the specified

offenses. 42 U.S.C. §§ 16911(3)–(4) (emphasis added). Such language is similar to other statutory elements of crimes requiring a jury determination. See, e.g., Gaudin, 515 U.S. at 522–23 (holding defendant has a constitutional right for a jury determination of whether a false statement was "materially false" in violation of 18 U.S.C. § 1001); United States v. Bamberg, 478 F.3d 934, 938 (8th Cir. 2007) (finding evidence was sufficient for a jury to determine analogue drug was "substantially similar" to a controlled substance based on number of statutory considerations in 21 U.S.C. § 802(32)); United States v. Johnson, 718 F.2d 1317, 1322–23 (5th Cir. 1983) (reversing a court determination that a gold certificate was a "security" under 18 U.S.C. § 2314 because a jury must make that determination).

Neither party briefed whether the tier classification was for the jury or the court, and this Court wants to give the parties an opportunity to brief the issue. This Court need not resolve the matter now because evidence exists that Marrowbone has been in custody for years since his 1982 conviction and thus would face the responsibility to register even if he is not a tier III offender. This Court would like the parties to brief the question of whether the tier determination is for the court or jury.

IV. **Conclusion and Order**

Therefore, for the reasons explained above, it is hereby:

ORDERED that Defendant's Motion to Dismiss Indictment, Doc. 27, for failure to state an offense is DENIED.

DATED this 26th day of November, 2014.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE

13